# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KENNEDY LAFAYETTE,**

    Plaintiff,

    v.                                                                              Case No. 17-CV-86

**COMMISSIONER OF THE**
**SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

## DECISION AND ORDER

Kennedy Lafayette alleges disability based primarily on back pain stemming from his scoliosis. After the Social Security Administration (SSA) denied his applications for disability benefits, Mr. Lafayette requested and received a hearing before an administrative law judge (ALJ). The ALJ determined that Mr. Lafayette was capable of working notwithstanding his impairments. Mr. Lafayette now seeks judicial review of that decision.

Mr. Lafayette argues that the ALJ committed errors in assessing his residual functional capacity (RFC)—that is, the most he can still do despite his limitations. He seeks an award of benefits or, alternatively, a remand for further proceedings. The Commissioner contends that the ALJ did not commit an error of law in reaching her decision and that the decision is otherwise supported by substantial evidence. For the reasons that follow, the Court agrees with the Commissioner and therefore will affirm its decision denying Mr. Lafayette disability benefits.

I.   **Background**

Kennedy Lafayette was born in Gary, Indiana, on October 12, 1971. Transcript 28, 296, ECF Nos. 12-2–12-9. He moved to Milwaukee, Wisconsin, for his junior year of high school and eventually obtained his diploma through Milwaukee Area Technical College (MATC). Tr. 296. In 2000, Mr. Lafayette began working at Aurora Sinai Medical Center as an x-ray file clerk. Tr. 30, 202. He stopped working in 2010, however, because he was unable to perform the increased job duties required by his employer. Tr. 31–33, 202–08, 213–14, 237–38, 282, 284. In 2012, Mr. Lafayette began studying educational policy at the University of Wisconsin-Milwaukee. Tr. 30, 220. He transferred to MATC for the Fall 2014 semester. Tr. 50.

Mr. Lafayette suffers from scoliosis, psychological issues, gastroesophageal reflux disease, anemia, unintentional weight loss, and dyspepsia. Tr. 212. He applied for disability insurance benefits in September 2010 but was denied at the administrative level. *See* Tr. 68–75. Mr. Lafayette reapplied in February 2013, alleging that his disability began on January 11, 2013. Tr. 188–200. This time he also sought supplemental security income. After the SSA denied his applications initially, Tr. 79–91, and upon reconsideration, Tr. 92–117, Mr. Lafayette requested a hearing before an ALJ, Tr. 146–77, 180–86.

The administrative hearing was held on October 13, 2015, before ALJ Margaret J. O'Grady. *See* Tr. 25–63; *see also* Tr. 118–21, 178–79, 286. Mr. Lafayette was represented by counsel at the hearing. The ALJ heard testimony from Mr. Lafayette and William Dingess, M.S., B.S., an impartial vocational expert. At the

time of the hearing, Mr. Lafayette was not married, and he had a sixteen-year-old child. Tr. 29. He was living at his cousin's house, but he frequently moved from place to place, staying with family or at shelters. Tr. 29, 35–36. Mr. Lafayette was, however, taking basic skills courses at MATC. Tr. 50–54, 393–94.

The ALJ followed the five-step sequential evaluation process and on December 8, 2015, she issued a decision unfavorable to Mr. Lafayette. Tr. 6–24. The ALJ determined that (1) Mr. Lafayette did not engage in substantial gainful activity since his alleged onset date; (2) Mr. Lafayette suffered from three "severe" impairments: scoliosis, anemia, and hemorrhoids; (3) Mr. Lafayette did not suffer from an impairment or combination of impairments that met or medically equaled the severity of a presumptively disabling impairment; Mr. Lafayette had the RFC to perform sedentary work with certain physical restrictions; (4) Mr. Lafayette could not perform his past relevant work as a file clerk and parts transporter; and (5) Mr. Lafayette remained capable of performing the requirements of various unskilled, sedentary occupations. *See* Tr. 9–20. Based on those findings, the ALJ concluded that Mr. Lafayette was not disabled.

Thereafter, the Appeals Council denied Mr. Lafayette's request for review, Tr. 1–3, making the ALJ's decision the final decision of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

Mr. Lafayette filed this action without the assistance of counsel on January 19, 2017, seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). *See* Complaint, ECF No. 1. The matter was reassigned to this Court after

the parties consented to magistrate judge jurisdiction. *See* Consent to Proceed Before a Magistrate Judge, ECF Nos. 4, 5. Mr. Lafayette subsequently obtained counsel. *See* Appearance of Counsel, ECF No. 16. The matter is now fully briefed and ready for disposition. *See* Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security, ECF No. 21; Defendant's Memorandum in Support of the Commissioner's Decision; ECF No. 22; Plaintiff's Reply, ECF No. 25.

## II. Standard of Review

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Judicial review is limited to determining whether the Commissioner's final decision is supported by "substantial evidence." *See* § 405(g); *see also Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore*, 743 F.3d at 1120–21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

In reviewing the record, courts "may not re-weigh the evidence or substitute [their] judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th

4

Cir. 2004). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Moore*, 743 F.3d at 1121. The ALJ's decision must be reversed "[i]f the evidence does not support the conclusion." *Beardsley*, 758 F.3d at 837. Likewise, reviewing courts must remand "[a] decision that lacks adequate discussion of the issues." *Moore*, 743 F.3d at 1121.

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if her decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003).

### III. Discussion

Mr. Lafayette maintains that he is disabled and that the Commissioner's decision to the contrary is not supported by substantial evidence and is contrary to law and regulation. *See* Compl. 4. He asks the Court to reverse the ALJ's decision and award benefits. *See* Pl.'s Reply 10. Alternatively, he seeks remand of the matter to the Commissioner for further proceedings. *See* Pl.'s Br. 19; Pl.'s Reply 10–11.

5

## A. Legal framework

Under the Social Security Act, a person is "disabled" only if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). The disability must be sufficiently severe that the claimant cannot return to his prior job and is not capable of engaging in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the SSA must follow a five-step sequential evaluation process, asking, in order: (1) whether the claimant has engaged in substantial gainful activity since his alleged onset of disability; (2) whether the claimant suffers from a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of any impairment listed in the SSA regulations as presumptively disabling; (4) whether the claimant's RFC leaves him unable to perform the requirements of his past relevant work; and (5) whether the claimant is unable to perform any other work. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four." *Id.*

Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

**B. Legal analysis**

Between steps three and four of the sequential evaluation process, the ALJ must determine the claimant's RFC. 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1); *see also* Social Security Ruling (SSR) No. 96-8p, 1996 SSR LEXIS 5, at *5 (July 2, 1996). ALJs must assess a claimant's RFC "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' . . . submitted by an individual's treating source or other acceptable medical sources." SSR No. 96-8p, 1996 SSR LEXIS 5, at *2–6; 20 C.F.R. § 404.1545(a)(3); 20 C.F.R. § 416.945(a)(3).

The ALJ here determined that Mr. Lafayette had the RFC to perform sedentary work[1] with certain postural limitations. Tr. 13. The ALJ based this finding on her review of the entire record, including Mr. Lafayette's alleged symptoms, the objective medical evidence, and the opinions of various medical sources. *See* Tr. 13–18. Specifically, the ALJ noted that Mr. Lafayette had worked

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).

Accordingly, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10p, 1983 SSR LEXIS 30, *13 (Jan. 1, 1983).

7

for ten years despite his back issues, Tr. 15; Mr. Lafayette received only conservative treatment for his back pain and had no significant flare-ups in 2015, Tr. 15 (citing Tr. 362, 368–84); and Mr. Lafayette attended college courses three days per week, spent time in the library completing his schoolwork, and used public transportation, Tr. 16 (citing Tr. 393–94 and hearing testimony). The ALJ also relied on the opinions of Neal Pollack, D.O., and Mina Khorshidi, M.D., both of whom concluded that Mr. Lafayette was capable of sedentary work.[2] Tr. 15 (citing Tr. 349–51), 16 (citing Tr. 103, 350). This evidence constitutes substantial evidence in support of the ALJ's RFC assessment.

Mr. Lafayette nevertheless argues that the ALJ erred in failing to credit other substantial evidence that demonstrated he was unable to perform even a restricted level of sedentary work. In particular, he claims the ALJ erred when she rejected the opinions of his treating physician and discredited his subjective symptoms. The Court will address each argument in turn.

### 1. Whether the ALJ erred in evaluating the opinion of Mr. Lafayette's treating physician

Mr. Lafayette first argues that the ALJ failed to give sufficient weight to the opinions offered by his treating physician, Kern A. Reid, M.D. Specifically, the ALJ did not credit Dr. Reid's opinion regarding Mr. Lafayette's sitting capabilities and did not address Dr. Reid's opinion that Mr. Lafayette needed to lie down throughout the workday outside of normal breaks. These errors were material, according to Mr.

---

[2] Dr. Pollack actually used the term "sedentary activity." Tr. 350. Mr. Lafayette's attempt to create a material distinction between sedentary activity and "sedentary work," see Pl.'s Reply 3, is unconvincing.

8

Lafayette, because all work would be precluded if the ALJ had accepted Dr. Reid's opinions. *See* Pl.'s Br. 9–10, 12–15; Pl.'s Reply 3–7.

An ALJ must give "controlling weight" to a treating source's opinion on the nature and severity of the claimant's impairment if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *see also* SSR 96-2p, 1996 SSR LEXIS 9, at *1–4 (July 2, 1996); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

An opinion that is not entitled to controlling weight need not be rejected. Instead, the opinion is entitled to deference, and the ALJ must weigh it using several factors, including the length, nature, and extent of the claimant's relationship with the treating physician; the frequency of examination; whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; and whether the physician is a specialist. *See* 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c); *see also Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1087 (E.D. Wis. 2009). Moreover, the ALJ must always give "good reasons" to support the weight she ultimately assigns to the treating physician's opinion. § 404.1527(c)(2); § 416.927(c)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Dr. Reid completed a Medical Assessment and Residual Functional Capacity form on September 14, 2015. Tr. 391–92. On the form, Dr. Reid indicated that Mr. Lafayette could stand, walk, and sit, respectively, for only four hours in an eight-hour workday. Dr. Reid further indicated that Mr. Lafayette would not be able to

get through a workday without needing to lie down outside of normal breaks; could lift a maximum of ten pounds; could occasionally do work above the shoulder, twist and turn, or climb; and could never bend at the waist or squat. Dr. Reid anticipated that Mr. Lafayette would be absent from work three or more days per month due to his impairments or treatment.

### a. Sitting limitations identified by Dr. Reid

The ALJ afforded "little weight" to the sitting limitations identified in the 2015 questionnaire because they were not supported by Dr. Reid's treatment notes and because they were "not consistent with the overall evidence of record." *See* Tr. 18. These reasons are sufficient for assigning little if any weight to the opinions of a treating source, *see Loveless*, 810 F.3d at 507 (citing § 404.1527(c)(2)), and they are supported by record.

*First*, Dr. Reid's treatment notes from 2015 do not reflect significant limitations stemming from Mr. Lafayette's impairments. *See* Tr. 368–75. Dr. Reid saw Mr. Lafayette only twice in 2015 and, during those visits, he simply refilled Mr. Lafayette's prescriptions for Tramadol and Cyclobenzaprine and noted that he would not be dispensing any narcotic pain medication. The focus of those treatment notes is Mr. Lafayette's non-severe impairments, including his obesity and vitamin D deficiency. The ALJ therefore reasonably concluded that Mr. Lafayette's back impairment was stable with medication and that Dr. Reid's opinion about Mr. Lafayette's sitting capabilities was not supported by his own treatment notes. *See* 20 C.F.R. § 404.1527(c)(3); 20 C.F.R. § 416.927(c)(3).

10

*Second*, despite his back pain, Mr. Lafayette worked for ten years as an x-ray file clerk, a job the vocational expert classified as light work. *See* Tr. 31–33, 59. He left this position because he was not able to perform increased job duties that required him to work at a medium exertional level. *See* Tr. 54–55, 59. Mr. Lafayette has not presented any objective evidence to support his contention that his symptoms worsened after he stopped working in 2010. *See* Pl.'s Reply 3. Consequently, this work history is inconsistent with Dr. Reid's opinion that Mr. Lafayette could not sit long enough to perform the requirements of sedentary work. *See* 20 C.F.R. § 404.1527(c)(4); 20 C.F.R. § 416.927(c)(4).

*Finally*, Dr. Reid's opinion is inconsistent with Mr. Lafayette's ability to take in-class courses at MATC. Mr. Lafayette testified at the hearing that three days per week he rode the bus to MATC, sat through about five hours of classes (one hour for one class and two hours each for the other two), spent another one-and-a-half hours at the library, and then rode the bus home. *See* Tr. 50–54. During that semester, Mr. Lafayette attended every class without issue. *See* Tr. 56. This self-reported activity exceeds the sitting limitations opined by Dr. Reid.

Mr. Lafayette maintains that his ability to attend MATC does not undermine Dr. Reid's opinion because, during those activities, he was able to take breaks, stand up, and walk around as needed. *See* Pl.'s Br. 11–12; Pl.'s Reply 3–4; *see also* Tr. 54, 56. That may be true, but it does not help Mr. Lafayette here. The vocational expert testified that, even if Mr. Lafayette needed to alternate positions, he could still work as an information clerk, office helper, or an inspector as long as he did not

11

need to leave the work area. Tr. 60. Mr. Lafayette did not testify that he left class when he needed to take a break from sitting. And the jobs identified by the vocational expert would still allow Mr. Lafayette to walk around at regular intervals during his two fifteen-minute breaks and a thirty-minute lunch break, each separated by about two hours. *See* Tr. 62. Accordingly, to the extent the ALJ erred by not including a sit-stand option in her RFC assessment, such error was harmless. *See Farrell*, 692 F.3d at 773.

### b. Limitation to lie down identified by Dr. Reid

Though the ALJ did not specifically reference Dr. Reid's opinion on Mr. Lafayette's need to lie down, a commonsense reading of the ALJ's decision shows that she fully considered the September 2015 assessment and afforded little weight to all opinions contained therein. The ALJ described a number of Dr. Reid's particular findings, concluded that "[l]ittle weight is given to Dr. Reid's opinions in the 2015 questionnaire," and explained the bases for that decision. Tr. 18. As discussed in detail above, the ALJ provided "good reasons" for rejecting Dr. Reid's 2015 opinions. The ALJ did not err by failing to mention each and every opinion offered by Dr. Reid; the ALJ reasonably rejected all of them. *See Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) (holding that "an ALJ need not provide a complete written evaluation of every piece of testimony and evidence").

Moreover, Dr. Reid did not explain the basis for such a limitation, and Mr. Lafayette has not identified any evidence to support it. Dr. Reid's treatment notes do not reflect a need to lie down throughout the day. *See* Tr. 368–75. Mr. Lafayette

points to a statement by consultative examiner Brandon J. Rebholz, M.D., that Mr. Lafayette needed to take "frequent breaks" throughout the workday. *See* Pl.'s Br. 15 (citing Tr. 294). But that opinion was rendered in November 2010—more than two years prior to Mr. Lafayette's alleged onset date. Also, Dr. Rebholz's opinion is of questionable value to Mr. Lafayette given that he ultimately concluded that Mr. Lafayette was "best suited" for sedentary work, the same conclusion reached by the ALJ. *See* Tr. 294.

Accordingly, the ALJ provided sufficient reasons for assigning little weight to the opinions of Mr. Lafayette's treating physician.

### 2. Whether the ALJ erred in evaluating Mr. Lafayette's subjective symptoms

Mr. Lafayette also argues that the ALJ failed to give sufficient weight to his subjective complaints of disabling symptoms. ALJs use a two-step process for evaluating an individual's symptoms. SSR No. 16-3p, 2016 SSR LEXIS 4, at *5–10 (March 16, 2016).[3] First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *5. Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain

---

[3] The ALJ here applied SSR 96-7p in evaluating Mr. Lafayette's subjective symptoms. *See* Tr. 13–14. That Policy Interpretation Ruling, however, has since been superseded by SSR 16-3p. Numerous district courts have held that SSR 16-3p applies retroactively because it is a clarification of the law. *See, e.g., Mendenhall v. Colvin*, 3:14-CV-3389, 2016 U.S. Dist. LEXIS 105404, at *6–10 (C.D. Ill. Aug. 9, 2016) (collecting cases). Moreover, the Commissioner acknowledges that, "for purposes of this case, SSR 16-3p and 96-7p are identical." Def.'s Mem. 8–9 n.5. The Court will therefore analyze the ALJ's decision through the lens of SSR 16-3p.

13

and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *9.

An ALJ's evaluation of an individual's subjective allegations "is entitled to deference and will not be upset unless it is 'patently wrong,'" *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (quoting *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013)), or "divorced from the facts contained in the record," *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008).

The ALJ here determined that Mr. Lafayette's subjective symptoms were "not entirely credible." Tr. 14. In reaching this finding, the ALJ summarized Mr. Lafayette's allegations and discussed in detail the objective medical evidence. *See* Tr. 14–16. The ALJ also considered Mr. Lafayette's reported daily activities and all of the opinion evidence contained in the record. *See* Tr. 16–18. Based on her review, the ALJ concluded that Mr. Lafayette's work history, the medical evidence, and Mr. Lafayette's reported activities "strongly suggest[ed]" he could tolerate the physical demands of sedentary work with certain postural limitations. *See* Tr. 15–16.

### a. Mr. Lafayette's claimed sitting limitations

Mr. Lafayette's first argument, that the ALJ erred in not crediting his sitting limitations, *see* Pl.'s Br. 9–12; Pl.'s Reply 1–3, is unavailing. The ALJ expressly noted that Mr. Lafayette claimed he could sit for a maximum of thirty minutes but found this allegation was not completely credible based on his history working at the light exertional level, conservative treatment, relatively stable symptoms, and ability to attend college courses three days per week. *See* Tr. 15–16. The ALJ also

14

determined that Mr. Lafayette's claimed limitations were undermined by the opinions of Dr. Pollack and Dr. Khorshidi. *See* Tr. 16–17.

Mr. Lafayette maintains that the ALJ made inconsistent findings when she cited his work history as one reason to reject his sitting limitations but then found he was incapable of performing that work. Those findings, however, are not inconsistent. The ALJ correctly noted that Mr. Lafayette worked for years as a filing clerk—a job that required an extensive amount of walking—despite his scoliosis diagnosis and resulting back pain. The ALJ also correctly noted that Mr. Lafayette quit that job when his employer increased his job duties. The ALJ did not suggest that Mr. Lafayette was still capable of performing light work. Rather, she reasonably concluded that Mr. Lafayette's condition had not deteriorated to the extent he claimed. Hence the "not completely credible" finding.

Mr. Lafayette also maintains that the ALJ mischaracterized his level of treatment. The Court respectfully disagrees. The ALJ acknowledged that Mr. Lafayette treated his back pain with medications and that he had received an epidural steroid injection. *See* Tr. 14–15. However, the ALJ reasonably concluded, based on the objective medical evidence—which showed that Mr. Lafayette's scoliosis was "mild" and that he did not experience any significant flare-ups in 2015—that Mr. Lafayette's condition remained stable. *See* Tr. 15 (citing Tr. 362, 368–84). Mr. Lafayette has not identified any evidence the ALJ missed that contradicted her findings.

Finally, Mr. Lafayette maintains that the ALJ failed to consider his limitations in daily activities and erroneously equated his ability to attend college with an ability to work. Again, the Court disagrees. The ALJ expressly noted that Mr. Lafayette claimed to no longer cook or perform household chores. *See* Tr. 14. Moreover, the ALJ reasonably determined that Mr. Lafayette's educational activities—including using public transit to get to and from class, spending about fifteen hours each week in class, and studying for approximately sixty to ninety minutes in the library—suggested he was not as limited as he claimed. And, as discussed above, according to the vocational expert, Mr. Lafayette would still be capable of working if he needed to frequently alternate between sitting and standing. Mr. Lafayette's suggestion that he was given more flexibility in school than would be allowed in competitive employment is therefore misplaced. Accordingly, the ALJ did not err in finding that Mr. Lafayette was capable of meeting the sitting demands of sedentary work without additional limitation.

### b. Mr. Lafayette's combined impairments

Mr. Lafayette's next argument, that the ALJ did not consider his severe and non-severe impairments in combination, *see* Pl.'s Br. 14–15; Pl.'s Reply 7–9, is difficult to follow. At step two of the sequential evaluation process, the ALJ determined that some of Mr. Lafayette's impairments had more than minimal effects on his ability to perform basic work activities but that others were not severe. Tr. 11–13. Because Mr. Lafayette had at least one severe impairment, the ALJ proceeded to the third step. At step three, the ALJ found that Mr. Lafayette did

not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed as presumptively disabling. Tr. 13. None of Mr. Lafayette's arguments call into question either of these findings.

Between steps three and four, the ALJ assessed Mr. Lafayette's RFC, noting that she "considered *all* symptoms and the extent to which [those] symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. 13 (emphasis added). The ALJ then discussed all of Mr. Lafayette's impairments, including his scoliosis, anemia, hemorrhoids, chest pain, vertigo, mental impairments, obesity, and vitamin D deficiency. *See* Tr. 13–18. The ALJ determined that, notwithstanding those impairments, Mr. Lafayette was capable of sedentary work with a few postural limitations.

Mr. Lafayette does not explain how the combined effects of his impairments limited his ability to do even a restricted level of sedentary work. Nor does he point to any evidence in the record to support such disabling symptoms. The Court will not attempt to construct arguments for him.

### c. Mr. Lafayette's complaints of disabling pain

Mr. Lafayette's final argument, that the ALJ did not discuss the impact of his pain on his physical impairments, *see* Pl.'s Br. 18–19; Pl.'s Reply 9–10, also misses the mark. To support his argument, Mr. Lafayette points to a Psychological Disability Report that consultative psychological examiner Jeremy Meyers, Ed. D., completed in June 2013. *See* Tr. 295–99. After examining Mr. Lafayette and administering a series of mental-status tests, Dr. Meyers concluded that Mr.

Lafayette had difficulty carrying out simple instructions, maintaining attention and concentration, and meeting work pace demands as a result of his back pain. Mr. Lafayette maintains that the ALJ erroneously rejected Dr. Meyers's opinions based on her belief that they were outside the area of Dr. Meyers's expertise as a psychologist. Mr. Lafayette suggests that the ALJ should have provided Dr. Meyers a second opportunity to justify his opinions. The ALJ, however, reasonably discounted Dr. Meyers's opinions because they appeared to be based on Mr. Lafayette's physical (rather than mental) impairments.

To the extent this finding was erroneous, it was also harmless because the ALJ provided other, independently valid reasons for assigning "little weight" to Dr. Meyers's opinions. The ALJ explained that Dr. Meyer's opinions were inconsistent with: (1) the global assessment of functioning score he assigned to Mr. Lafayette, which suggested only mild symptoms; (2) the opinions of both state agency psychological consultants; and (3) Mr. Lafayette's ability to complete and attend college courses. Tr. 17. The ALJ therefore provided good reasons for the weight she assigned to Dr. Meyers's opinions.

Overall, the ALJ provided sufficient reasons for discounting Mr. Lafayette's subjective complaints of disabling symptoms. The ALJ's evaluation of those claimed symptoms therefore was not patently wrong or divorced from the facts contained in the record.

## IV. Conclusion

For all the foregoing reasons, the Court finds that the ALJ did not commit reversible error in finding that Mr. Lafayette was not disabled as of January 2013. The Court therefore will affirm the ALJ's decision denying Mr. Lafayette's claims for disability benefits.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of February, 2018.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge